UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2020 JUN 16 PM 3: 1

DEPUTY CLERK_____

MONIQUE DEGENSTEIN, PLAINTIFF

VS.

CIVIL ACTION NO.

RENEE HALL, CHIEF OF POLICE,
DALLAS POLICE DEPARTMENT,
UNKNOWN DOES 1 - 10,
DEFENDANTS

3-20CV1599-G

ORIGINAL COMPLAINT AND JURY DEMAND

FEDERAL JURISDICTION

1.   This is an action brought pursuant to 28 U.S. Code Section 1331.This is a lawsuit for
vindication of Constitutional Rights under 42 U.S.C. Section 1983, and the Fourth and
Fourteenth Amendments to the United States Constitution, unlawful arrest, unlawful
incarceration, official oppression by the Dallas Police Department, police officers Does 1
through 10. Plaintiff seeks attorney fees pursuant to 42 U.S.C. Section 1983.

PENDANT JURISDICTION

2.   The Plaintiff prays that the Court take jurisdiction over the Plaintiff's related state claims
under 28 U.S. Code Section 1367, as these claims are causally related to Plaintiff's federal
claims.

VENUE

3.   The venue of this case is proper in the Dallas Division of the Northern District of Texas,
as all activities described herein occurred in the area of the Northern District of Texas,
Dallas Division.

1

## PARTIES

4.  Plaintiff Monique Degenstein ("Plaintiff") is the plaintiff of this case and she at all relevant times has been a resident of Dallas County, Texas. She now resides in Richardson, Texas.

5.  Defendant Renee Hall ("Defendant Renee Hall") is Chief of Police of Dallas County, Texas, and is sued in her official capacity. She may be served at 1400 S. Lamar Street, Dallas, Texas 75215.

6.  Defendant Dallas Police Department (Defendant Dallas Police") is an instrumentality of Dallas County, Texas, which is a political subdivision of the State of Texas. It may be served with process by serving Renee Hall, Chief of Police, at Dallas Police Department, 1400 S. Lamar Street, Dallas, Texas 75215

7.  Dallas County Judge Clay Jenkins will have to be served with the lawsuit at Hon. Clay Jenkins, 411 Elm Street #200, Dallas, Texas 75202.

8.  United States Attorney for the Northern District of Texas, 1100 Commerce Street, Dallas, Texas 75242 will have to be served with process.

9.  Does 1 through 10 are unknown Dallas Police officers involved in this case who deprived the Plaintiff of her civil rights and unlawfully arrested the Plaintiff. Does 1 through 10 also includes the Dallas police officers who went to the house on Sandy Trail in Richardson to harass and stalk the Plaintiff. The Dallas police sought to stalk the Plaintiff and have her booted out of the house by the owner.

10. The defendants will be collectively referred to herein as "the Defendants."

## JOINT AND SEVERAL LIABILITY

11. The liability in this case is joint and several as to all defendants.

## BACKGROUND FACTS

12.  Plaintiff Monique Degenstein is a United States citizen and lawful resident of Texas. She has never been convicted of a misdemeanor or felony of any kind.

13.  Plaintiff Monique Degenstein is of Jewish and Mexican heritage and speaks English, Spanish, and Afrikaans/Yeddish/German. She has lived in Mexico City (MX), New York (U.S.), Buenos Aires (Argentina), Johannesburg (So. Africa), and Barcelona (Spain). Her parents had lived in Germany.

14.  During the period between July 2017 and October 2018, Monique Degenstein had been the victim of a fraud perpetrated by Donald Milton Smith (age about 71), 8250 Meadow Road, #1110 Dallas Texas . During the period prior to July 2018, Donald Milton Smith had ardently courted Monique Degenstein and had caused her to move in with him in his postage sized apartment in the Hanover Midtown Apartments on Meadow Road and 75 in Dallas, Texas.

15.  Monique Degenstein had met Donald Milton Smith through Match.Com and had persuaded her to move Into his small postage stamp sized apartment at the Hanover Apartments in Dallas, Texas under the pretense that he was going to marry her and move her into his (non-existent) mansion, which he then claimed was in Greenville, Texas.

15.  Shortly after moving in with Donald Milton Smith, Monique Degenstein discovered that he was stealing her personal property and selling it to third parties.

16.  After, Monique Degenstein confronted Donald M. Smith about the theft of her personal property, he became enraged and abusive towards her. He put a loaded pistol to her head and threatened her life; he hit her with his fist on her arms and torso; he kicked her with his feet on her legs; he roughly pulled her hair; and he abused her with racial slurs, calling her a "half-nigger Mexican Jew." Donald Smith disparaged blacks, Mexicans, and Jews. Donald Smith threatened her and declared that he would bury her in a place (grave) nobody "would ever find under a nigger."

17.  On or about 10-3-18, Dallas Police arrived at the residence of Donald Milton Smith and Monique Degenstein at 8250 Meadow Road #1110, Dallas, Texas 75231 (Hanover Midtown Apartments) at about 7:00 p.m. The Dallas Police had arrived at the residence after Monique Degenstein made a failed attempt to do a 911 call to the Dallas Police. Donald Smith had taken over the 911 call from Monique Degenstein and made a false criminal complaint about

3

her.

18. The Dallas Police had originally been contacted by Monique Degenstein through an emergency 911 call but the 911 call was taken over by Donald Milton Smith who proceeded to provide a false accusation against Monique Degenstein.

19. Donald Smith discussed what charges he should bring against Monique Degenstein with the Dallas Police officers who arrived at his (and Monique Degenstein's) apartment. Donald Smith accused Monique Degenstein of being a "Democrat," a Mexican-half Nigger Jew" and inquired of the Dallas Police Officers as to whether he should charge her with sexual assault or injury to the elderly.

20. The Dallas Police officers and Donald Milton Smith engaged in banter with one another and joked about Monique Degenstein's racial background, in which Donald Smith referred to Monique Degenstein as a stray dog, a "Mexican-Jew and half-nigger."

21. After an hour or so, the Dallas police departed the residence and ordered Monique Degenstein to accompany them and arrested her without probable cause to believe that a crime had been committed. The Dallas Police ordered Monique Degenstein to depart the premises without her shoes or coat and to go out in the cold and rainy weather.

22. Once in the police car Monique Degenstein could determine that the police officer driving the police car had been drinking alcohol, as his breath and clothes smelled of alcohol. Monique Degenstein could hear over the loud music what the police officers were saying. One of the police officers remarked that he could see no reason to arrest her because she had "not committed a crime."

23. The police officers were uncertain as to what charge to make against her. One of the officers opined that she has done "nothing" to be arrested for. The Dallas Police Officers had the music volume high to keep her from hearing their discussions, but she was able to hear one officer stating that Monique Degenstein had "done nothing" and that they had no reason to arrest her.

24. The Dallas police offers drove the police car around for about an hour, trying to figure out what to charge her with, before taking Monique Degenstein to the Dallas County Jail. The

4

Dallas police officers were undecided as to what to change her with.

25. Upon arriving at the Dallas County Jail, the Dallas Police invented the charge of injury to the elderly and filed that charge against Monique Degenstein. The Dallas Police did not file a signed police report or provide an affidavit to support the arrest.

26. Later Donald Milton Smith claimed that he did not make criminal charges against Monique Degenstein. Nevertheless, the court records show that he is credited with having made the charge of injury to the elderly against her

27. When Monique Degenstein went before a female magistrate, she was accused by the female magistrate of having assaulted an elderly person, notwithstanding the complete lack of a record to support such an accusation. There was no police report or affidavit of arrest. The magistrate jailed Monique Degenstein for one week and put a $1,500.00 bond on her.

28. Monique Degenstein spent one week in Dallas County Jail and was there without shoes or a coat. She had no money on her person at the time of arrest, as Donald Milton Smith had stolen it (some $28,000.00 in cash) from her.

29. During her stay in Dallas County Jail, Monique Degenstein became ill and was hospitalized at the jail infirmary.

30. Following she week in jail she was released from Dallas County Jail into the street without shoes or coat into the cold and rainy weather.

31. Monique Degenstein was traumatized by her arrest and jailing; the incarceration had affected her health and caused her to be hospitalized; and had adversely affected her faith in the American Justice System.

32. Following her release, Monique Degenstein contacted Donald Milton Smith and through the actions of a third person asked that she (Monique Degenstein) be provided with her overcoats, shoes, and appropiate clothing.

33. Donald Milton Smith had stolen Monique Degenstein's money in the amount of $28,000.00 and had returned at most $1,000.00 of that money to her upon her release from jail. In October 2018. He refused to allow her back into the apartment, notwithstanding the fact that she had no other place to go to live and notwithstanding the fact that he had moved her into his

5

apartment and had caused her to abandon her house in Cedar Hill, Texas. Donald Smith effectively used self-help to evict Monique Degenstein from her home at the Midtown Apartments and, as such, unlawfully evicted her from her home.

34. On October 21, 2018, Donald Milton Smith allowed Monique Degenstein to obtain some of her clothing from him and asked her to come to the Public Storage facility at Greenville Avenue and Meadow Road in Dallas. Once Monique Degenstein arrived there and observing that there were persons around, Donald Milton Smith changed the plan and had Monique Degenstein follow him in her car and go to the Public Storage facility at Greenville Avenue near Forest Lane in Dallas, Texas. Once in the storage unit at Greenville near Forest Lane, Donald Milton Smith put a pistol to Monique Degenstein's head and demanded that she perform oral sex on his stinky penis.

35. While performing oral sex on Donald Melton Smith's stinky penis, Monique Degenstein inadvertently took several photos of Donald Milton Smith in the act of obtaining oral sex. The camera date and time marked the time of the photos. The photos show that the events of the sexual assault took place on 10-21-18 at about 4:30 pm. These photos will be provided to the Court. The photos are date and time marked by the camera.

36. In a hearing before Judge Benson, counsel for Monique Degenstein was asked if he had sexually assaulted Monique Degenstein and denied that he was at the location of the sexual assault at Public Storage on 10-21-18. But, the time dated photos show otherwise and further show that Donald Melton Smith is not only a criminal rapist but a criminal liar. His lawyer stood by him when Donald Smith lied to the court.

37. After the sexual assault on 10-21-19, the Plaintiff made repeated (20) attempts to file criminal charges against Donald Milton Smith with the Dallas Police Department on Lamar Street in Dallas, Texas, but these efforts were thwarted by Donald Smith who through his contacts within the Dallas Police Department declined to take a criminal complaint from Degenstein against Donald Milton Smith. In addition, the Dallas Police endeavored to drive Monique Degenstein away by making racial slurs against her because of her Jewish and Mexican background. Dallas Police Officer Lembley asked Plaintiff, "Are you a wetback?"

38. The Dallas Police had accused Monique Degenstein of inventing the charges against Donald Melton Smith and had refused to look at her injuries.

6

39. Following the rejection of her criminal complaints, Donald Smith contacted Monique Degenstein and informed her that he was aware of the fact that the Dallas Police had rejected her charges against him and taunted her with racial slurs. As such, someone in the Dallas Police Department had contacted Donald Milton Smith and had apprised him of the action of the Dallas Police Department in rejecting Monique Degenstein's charges - a fact which delighted Donald Milton Smith.

40. During this time period, Monique Degenstein had to live and sleep in her car, but found a homeowner in Richardson who would allow her to rent a room in his house. The house was located at 432 Sandy Trail, Richardson, Texas 75080. On or about late October 2018 and without a warrant for arrest or a search warrant, some 5 or 6 Dallas Police cars surrounded the house at 432 Sandy Trail in Richardson, Texas, 75080 and endeavored to get Monique Degenstein to come outside, so that they could take some kind of action against her, but Monique Degenstein did not depart the residence and remained holed up in her room. After some 5-6 hours the Dallas Police departed without talking to Monique Degenstein. The whole purpose of the ruse was to cause the homeowner to eject Monique Degenstein from the house and to frighten her. The incident was terrorizing to Monique Degenstein. The next day, upon inspecting her car, Donald Smith had left a trinket on one of her car's windshield wipers to let Monique know that Donald Smith had instigated the stalking incident with the Dallas Police the night before.

41. Following Monique Degenstein's departure from Dallas County Jail, Donald Smith continued to endeavor to sabotage her economic position and to make her life as hard as possible. Donald Smith not only had possession of all of Monique Degenstein's personal property, including Steinway piano, valuable instruments, Rolex watches and heirloom jewelry, he had stolen her cash ($28,000.00) and he had thrown her out of the Apartment with no money and no place to go. He had put her out in the street with no place to live. In addition, he had maliciously had her BMW towed to an impound lot and had damaged the vehicle by breaking the windows and destroying the interior of the vehicle. He had sexually assaulted Monique Degenstein and endeavored to ruin her relationship with third parties by making false accusations against her and endeavoring to get hotels and other places of accommodation to reject her. Donald Smith had falsely accused Monique Degenstein of sexual perversity. In addition, Donald Milton Smith had stalked Monique Degenstein and had attempted to kill her.

7

42.  The criminal misconduct described herein resulted in the aggravated sexual assault of. Plaintiff, the theft of $28,000.00 in cash from Monique Degenstein, the theft and conversion of some $2,000,000.00 in family heirlooms, Rolex watches, Fontanarosa paintings Goya painting, piano, furniture, clocks (including one owned by Adolf Hitler), etc.

## CLAIMS AND CAUSES OF ACTION

43.  The following are Plaintiff's claims against the Defendants.

## INCORPORATION BY REFERENCE

44.  Plaintiff incorporates herein by reference as though set forth in full the paragraphs set forth under Statements of Fact in each of the claims set forth herein.

## UNLAWFUL ARREST

45.  The Defendants perpetrated an unlawful arrest and incarceration on Monique Degenstein.

46.  The Defendants arrested and jailed Monique Degenstein without probable cause and fabricated the reasons for her arrest and incarceration.

47.  As a consequence of the unlawful actions of the Defendants, the Plaintiff suffered an unlawful arrest and incarceration in the Dallas County Jail for one week.

48.  WHEREFORE, Plaintiff prays for the relief set forth in the Prayer below.

## FALSE IMPRISONMENT

49.  The Plaintiff alleges that Defendants caused the Plaintiff to be falsely imprisoned and further allege that the detention was willful.

50.  The Defendants jailed the Plaintiff without her consent.

51. The Defendants jailed the Plaintiff without the authority of law

52. As a consequence thereof, the Plaintiff suffered the loss of her liberty.

53. Wherefore, the Plaintiff prays for the relief set forth in the Prayer below.


## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54. The Plaintiff alleges that the Defendant inflicted severe emotional distress on the

    Plaintiff without justification or excuse.

55. The Defendants acted intentionally or recklessly.

56. The conduct was extreme and outrageous.

57. The Defendants' action caused the Plaintiff to suffer mental distress.

58. The mental distress was severe.

59. Wherefore, Plaintiff prays for the relief set forth in the Prayer below.


## SECTION 1983 FOR UNLAWFUL SEIZURE OF PLAINTIFF'S PERSON

60. The Plaintiff alleges that the Defendants violated 42 U.S.C. SECTION 1983 in unlawfully arresting the Plaintiff's person in violation of Plaintiff's Fourth and Fourteenth Amendment Rights to the United States Constitution.

61. The Defendants perpetrated their unlawful arrest of the Plaintiff's person without probable cause and based on false and manufactured evidence.

62. As a consequence of the Defendants' unlawful misconduct, the Plaintiff suffered an unlawful arrest, the loss of her liberty, and a deprivation of her Fourth and Fourteenth Amendment Rights to the United States Constitution.

63. Wherefore, the Plaintiff prays for the relief set forth below.

## CONSPIRACY TO VIOLATE 42 U.S.C. SECTION 1983 AND PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS

64. The Plaintiff alleges that the Defendants conspired to violate Plaintiff's rights under 42 U.S.C. Section 1983 and her rights under the Fourth Amendment and Fourteenth Amendment to the United States Constitution.

65. The Defendants conspired among themselves to what false charges to bring against the Plaintiff, knowing that the charges were bogus.

66. As a consequence of the Defendants' conspiracy the Defendants falsely charged the Plaintiff with the bogus charge of injury to the elderly and caused her to be unlawfully jailed for one week without probable cause to support the bogus charges.

67. Wherefore, the Plaintiff prays for the relief set forth in the Prayer, below.


## ATTORNEY FEES

68. The Plaintiff moves for reasonable attorney fees under 42 U.S.C. Section 1983.

69. Wherefore, the Plaintiff prays for the relief set forth in the Prayer.


## PRAYER

70. WHEREFORE, the Plaintiff prays for a declaratory judgment declaring that the Defendants conspired to deprive her of her Fourth Amendment and Fourteenth Amendment Rights under the United States Constitution; that they unlawfully arrested her without probable cause; and unlawfully had her jailed in Dallas County Jail; that they unlawfully abducted her in violation of the law, that they unlawfully stalked her and intentionally subjected her to serious mental anguish. The Plaintiff prays for actual, compensatory, and punitive damages against the Defendants and that judgment be joint and several. The Plaintiff further makes demand for an affirmative injunction against the named defendants in the interest of justice. The Plaintiff also prays for the award of reasonable attorney fees.

10

JURY TRIAL

71.   The Plaintiff makes demand for a jury trial.

RESPECTFULLY SUBMITTED,

/S/ RICHARD J. DEAGUERO

RICHARD J, DEAGUERO
ATTORNEY AT LAW
TBN05623500
2727 LBJ FREEWAY SUITE 304
DALLAS, TEXAS 75234
TEL. 214-243-0105
EMAIL rjdeaguerolaw@yahoo.com

11

JS 44   (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

*Monique Desjourdin*

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

*Renee Hall, Chief of Police*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

RECEIVED

JUN 1 6 2020

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | PROPERTY RIGHTS | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | LABOR | SOCIAL SECURITY | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 790 Other Labor Litigation | | Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | FEDERAL TAX SUITS | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | or Defendant) | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | ☐ 871 IRS—Third Party | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | IMMIGRATION | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
*42 USC 1983*

Brief description of cause:
*Unlawful arrest + Detention, Stalking*

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $ *5,000,000*

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   *1-16-20*

SIGNATURE OF ATTORNEY OF RECORD   *TRV 05623500*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____