IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONIQUE DEGENSTEIN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-01599-G (BT) |
| | § | |
| RENEE HALL, et al., | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Monique Degenstein, through her attorney, brings this civil action under 42 U.S.C. § 1983 for the violation of her civil rights and pendant state law claims. *See* 2nd Am. Compl. (ECF No. 9). The Court granted her motion for leave to proceed *in forma pauperis* and withheld service pending judicial screening. Now having screened her pleadings, the Court recommends dismissing Degenstein's claims against the Dallas Police Department, the Unknown Police Officer Does 1-10, Donald Milton Smith's daughter-in-law Doe 11, Renee Hall, Erin Nealy Cox, and Clay Jenkins; dismissing the federal claims against Donald Milton Smith, Scott Smith, Jason Smith, Ashley Smith, Sean McDonald, and the Money Law Firm LLC; and declining to exercise supplemental jurisdiction over Degenstein's remaining state law claims against Donald Milton Smith, Scott Smith, Jason Smith, Ashley Smith, Sean McDonald, and the Money Law Firm LLC.

## Background[1]

Degenstein, a female with Jewish and Mexican heritage, speaks English, Spanish, and Afrikaans/Yiddish/German. 2nd Am. Compl. 5. She has lived in Mexico City; New York; Buenos Aires, Argentina; Johannesburg, South Africa; Barcelona, Spain; and Birmingham, England. *Id.* 5. She now lives in Richardson, Texas. *Id.* 2, 5. Degenstein alleges that Donald Milton Smith, now about age 72, is "a low rent minimum wage con man who specializes in preying on unsuspecting naïve women," and she was one of his most recent victims. *Id.* 5. Degenstein further alleges that Smith claimed that he was a money manager for the Dallas Mavericks, but he actually worked for Restland Funeral Home in Dallas, Texas as a limousine/hearse driver earning $13.00 per hour. *Id.* Degenstein claims that Smith made a big deal of presenting her with bouquets of red roses, but the flowers were stolen from the graves of the recently deceased. *Id.* She also claims that Smith drove to her house in limousines to take her on excursions, but his own vehicle was an old, beat up, white mini-truck that he kept hidden from her until he had moved her into his small Dallas Midtown apartment. *Id.* According to Degenstein, Smith spent the better part of a year grooming her under the false pretense that he was going to marry her and move her into a non-existent mansion in the sky. *Id.*

Degenstein alleges that between July 2017 and October 2018, she was the victim of a fraud perpetrated by Smith. *Id.* 5-6. Smith used his family members;

---

[1] The Court draws this background information from Degenstein's Second Amended Complaint, which is the live pleading in this civil action.

his lawyer, Sean McDonald; the Money Law Firm LLC; and Dallas Police Officers to prevent Degenstein from having him charged by the Dallas Grand Jury with aggravated sexual assault, theft of $2,000,000.00 in inherited estate heirloom jewelry, objects d'art, and extensive personal property. *Id.* 6. From 2018 through August 2020, Smith made death threats against Degenstein and her daughter. *Id.* Smith also texted Degenstein with false greetings from her deceased son to cause her to suffer a heart attack. *Id.* At Smith's request, the Dallas Police Department unlawfully arrested, abducted, jailed, stalked, and interfered with her efforts to take her claims to a Dallas grand jury, and it also refused to assist her with recovering her stolen personal property. *Id.*

Prior to July 2018, Smith heavily courted Degenstein and persuaded her to move in with him in his Midtown apartment. *Id.* In July 2018, Degenstein moved in with Smith at the Park Central Hanover Apartments, and he began stealing her personal property and selling it to third persons. *Id.* Shortly after Degenstein moved in with Smith, she discovered that he was a low rent thief and conman, he was not a money manager for the Mavericks, the cars he was driving belonged to the funeral home, and he had a habit of watching pornography in the early morning. *Id.* 6-7.

Throughout June 2018 through August 2020 and beyond, Smith sold Degenstein's personal property to third persons. *Id.* 7. Degenstein confronted Smith about the theft of her personal property, and he became enraged and abusive toward her. *Id.* Smith threatened the lives of Degenstein and her daughter. *Id.* He

also tried to murder Degenstein with rat poison, but she discovered the rat poison and ran it down the kitchen drain. *Id.*

Around October 4, 2018, late in the evening, Dallas Police officers arrived at the residence of Smith and Degenstein after Degenstein made a failed attempt to make a 911 call. *Id.* Degenstein alleges that Smith took over the 911 call and made a false criminal complaint against her. *Id.* Smith and the officers joked about Degenstein's racial background, and Smith referred to her as a stray dog, a "Mexican-Jew and half-nigger." *Id.* 8.

When the officers left the residence, they arrested Degenstein without probable cause to believe a crime had occurred. *Id.* Degenstein was forced to leave the residence without her shoes or a coat in the cold and rainy weather. *Id.* In the police car, Degenstein determined that the officer driving the police car had been drinking alcohol because his breath and clothes smelled of alcohol. *Id.* Degenstein alleges she heard one of the officers remark that he could see no reason to arrest her because she had "not committed a crime." *Id.* According to Degenstein, the officers were uncertain what charge to make against her, and they drove the patrol car around for about an hour trying to decide what to charge her with before going to the Dallas County Jail. *Id.*

Degenstein alleges that at the Dallas County Jail, the officers fraudulently invented the charge of injury to the elderly and charged Degenstein with it. *Id.* 8-9. The officers did not file a signed police report or provide an affidavit in support of the arrest. *Id.* 9. Degenstein went before a magistrate judge, but she did not give

Degenstein a chance to deny the charge against her. *Id.* The magistrate judge had absolutely no evidence before her to support the charge, and Degenstein had no prior history of criminal conduct. *Id.* Degenstein was put in jail for one week and given a $1,500.00 bond. *Id.*

Degenstein could not pay the bond because all her money had been stolen by Smith (some $28,000.00), and she did not bring her purse to the jail. *Id.* She spent one week in the Dallas County Jail without shoes or a coat. *Id.* While at the Dallas County Jail, Degenstein became ill, and she was hospitalized at the jail infirmary. *Id.* She was released from Dallas County Jail to the streets without shoes or a coat. *Id.* 10.

Degenstein confronted Smith about the criminal charges, and he denied making any charges. *Id.* 9. However, court records show that Smith is credited with making the charge of injury to the elderly against her. *Id.* After Degenstein's release, she contacted Smith through third parties and asked that she be provided with overcoats, shoes, and proper clothing. *Id.* 10.

Smith stole Degenstein's money in the amount of $28,000.00, and he had possession of her heirloom property. *Id.* Smith returned, at most, $1,000.00 of that money to her upon release from jail. *Id.* In October 2018, Smith refused to allow Degenstein back into the apartment, even though she had no other place to live. *Id.* Smith unlawfully evicted her by essentially using self-help to remove Degenstein from her home at the Midtown Apartments. *Id.*

Degenstein claims that she was forced to live out of her car during this time, and Smith stalked her. *Id.* She also claims that Smith left jewelry on her car to terrorize her. *Id.* Smith taunted Degenstein, and she claims that he once told her that if she needed money, she could prostitute herself. *Id.*

On October 21, 2018, Smith permitted Degenstein to get some of her clothing from him, and he told her to come to the Public Storage at Greenville Avenue and Meadow Road in Dallas. *Id.* When she arrived and observed that there were people around, Smith changed the plan and had her go to the Public Storage at Greenville Avenue near Forest Lane in Dallas. *Id.* 10-11. Once there, Degenstein claims that Smith put a pistol to her head and forced her to perform a sex act on him. *Id.* 11.

Degenstein alleges that she inadvertently took several photos of Smith at the location and the time of the sexual assault. *Id.* The photos show the date and time, October 21, 2018 at 4:30 p.m., that Smith was present, and his shirt was disheveled. *Id.*

A hearing was held before Judge Benson regarding the sexual assault. *Id.* When Smith was asked if he sexually assaulted Degenstein, he denied it. *Id.* He also denied that he was at the Public Storage on October 21, 2018. *Id.* Degenstein claims that the pictures she took demonstrate that Smith was present at the date and time of the sexual assault, and his clothes were in disarray. *Id.*

After the sexual assault, Degenstein alleges that she made at least 20 repeated attempts to file criminal charges against Smith with the Dallas Police

Department on Lamar Street in Dallas, Texas. *Id.* She claims that Smith, through his contacts at the Dallas Police Department, prevented her from filing a criminal complaint. *Id.* Degenstein claims that the Dallas Police acted to drive her away by directing racial slurs against her and used her Jewish and Mexican background as the basis for making racial slurs against her. *Id.* She alleges that Officer Lembley asked her, "Are you a wetback?" *Id.* The Dallas Police accused Degenstein of making up the charges against Smith, and they refused to look at her injuries or pictures of her injuries. *Id.* Smith later contacted Degenstein and advised her that he was aware that the Dallas Police had rejected her charges and taunted her with racial slurs. *Id.* 11-12.

During this time, Degenstein claims that she was living and sleeping in her car, but she found a homeowner in Richardson who would rent her a room. *Id.* 12. Around late October or November 2018, five or six Dallas Police cars, without a search warrant or warrant for arrest, surrounded the house at 432 Sandy Trail in Richardson, Texas. *Id.* They attempted to get Degenstein to come outside so they could act against her. *Id.* She did not leave the residence or her room. *Id.* After five to six hours, the officers departed without talking to Degenstein. *Id.* She claims that the purpose of the incident was to cause the homeowner to evict Degenstein and frighten her. *Id.* The next day, Degenstein claims that she noticed Smith had left a trinket on one of her car's windshield wipers to let her know that he had instigated the stalking incident with the Dallas Police the night before. *Id.* Also, the Dallas Police damaged her car's gas cap. *Id.*

After Degenstein left Dallas County Jail, Smith continued to attempt to sabotage her economic position and make her life as difficult as possible. *Id.* Smith had Degenstein's personal property, he stole her cash ($28,000.00), and he threw her out of the apartment with no money and nowhere to go. *Id.* Smith also had Degenstein's BMW towed to an impound lot and damaged. *Id.* He attempted to ruin her relationship with third parties by making false accusations against her. *Id.* Smith stalked Degenstein and attempted to kill her. *Id.* Smith also told the Dallas Police where she was living in Richardson, and he visited the location. *Id.*

Smith committed aggravated sexual assault on Degenstein, stole $28,000.00 in cash, stole and converted $2,000,000.00 in family heirlooms, such as a Steinway piano, diamond rings, diamond necklaces, and Rolex watches. *Id.* 13. Defendants sought to discourage Degenstein from pressing criminal charges against Smith for aggravated sexual assault by threatening, harassing, and seeking to discourage her from her goal of having Smith charged by a Dallas grand jury with aggravated sexual assault. *Id.* Defendants also sought to have Degenstein abandon her claims to private property and heirloom jewelry by threatening to harm both her and her daughter and threatening to murder her and her daughter unless she left Texas and went to Canada. *Id.* 14.

Defendants succeeded in causing Degenstein to lose her private property and heirloom inheritance. *Id.* 13. From October 2018 through August 2020, Smith, with help from family members, Attorney Sean McDonald, the Money Law Firm LLC, the Dallas Police, unknown Dallas police officers, and others collaborated in

harassing Degenstein with threats against her life and the life of her daughter. *Id*. Defendants interfered with Degenstein's relationship with her lawyer, even offering to pay her $60,000.00 if she would terminate her lawyer. *Id*.

On June 16, 2020, Degenstein filed this lawsuit, and on August 21, 2020, she filed an amended complaint. *See* Compl. (ECF No. 2) & 1st Am. Compl. (ECF No. 6). On September 8, 2020, she filed a second amended complaint naming as Defendants Renee Hall, Chief of Police; Dallas Police Department; Clay Jenkins; Erin Nealy Cox; Unknown Police Officers Does 1-10; Donald Milton Smith; Sean McDonald; Money Law Firm LLC; Scott Smith; Jason Smith; Ashley Smith; and Donald Smith's daughter-in-law Doe 11. 2nd Am. Compl. (ECF No. 9 at 2-4.) By her lawsuit, Degenstein seeks an order directing Dallas County to present the facts of her alleged sexual assault by Smith to a grand jury, a declaratory judgment finding that Smith sexually assaulted her, injunctive relief, a declaratory judgment that specified property was stolen from her by Defendants, an order that Defendants return her property, at least $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, $150,000.00 in attorney's fees, and court costs. *Id*. 24-27.

On September 21, 2020, the Court granted Degenstein leave to proceed *in forma pauperis*, but withheld issuance of process pending judicial screening. Ord. (ECF No. 11). The Court has screened Degenstein's second amended complaint and recommends the following.

## Legal Standards and Analysis

Under 28 U.S.C. § 1915(e), a district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A court may also dismiss a complaint filed *in forma pauperis* at the preliminary screening stage if it is "clear" that the claims asserted are barred by limitations. *See Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993).

An action is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) ("A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law."). A complaint is without an arguable basis in law if it is grounded upon an untenable, discredited, or indisputably meritless legal theory, including alleged violations of a legal interest that clearly does not exist. *See Neitzke*, 490 U.S. at 326-27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level . . . ." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

10

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Twombly*, 550 U.S. at 555.

**1. Dallas Police Department**

Degenstein has named the Dallas Police Department as a defendant. (ECF No. 9 at 2.) "The capacity of an entity to sue or be sued 'shall be determined by the law of the state in which the district court is held.'" *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting Fed. R. Civ. P. 17(b)). "Federal courts in Texas have uniformly held that entities without a separate jural existence are not subject to suit." *Torti v. Hughes*, 2007 WL 4403983, at *2 (N.D. Tex. Dec. 17, 2007) (citing *Johnson v. Dallas Police Dep't*, 2004 WL 2964968 at *2 (N.D. Tex. Dec. 15, 2004), *adopted by* 2005 WL 119467 (N.D. Tex. Jan. 18, 2005) (Dallas police department not a proper defendant with jural existence); *Bridges v. Rossi*, 1998 WL 241242 at *5 (N.D. Tex. May 6, 1998) (same)); *see also Darby*, 939 F.2d at 313 ("In order for a plaintiff to sue a city department, it must 'enjoy a separate legal existence.'" (citations omitted)). "Therefore, '[u]nless the political entity that created the department has taken "explicit steps to grant the servient agency with jural authority," the department lacks the capacity to sue or to be sued.'" *Evans v. City of Dallas*, 2017 WL 958607, at *6 (N.D. Tex. Mar. 13, 2017) (citations omitted). "The burden of showing that the city or county department has the capacity to be sued rests on the plaintiff." *Cortes v. Havens*, 2014 WL 6861245, at *6 (N.D. Tex. Dec. 5, 2014) (citation omitted).

11

Because the Dallas Police Department lacks the authority to sue or be sued, Degenstein may not bring suit against it. She cannot cure this pleading defect by amendment. The District Court should therefore dismiss Degenstein's claims against the Dallas Police Department with prejudice.

## 2. Doe Defendants

Degenstein has named Unknown Police Officer Does 1-10 and Daughter-in-Law Doe 11 as defendants. (ECF No. 9 at 3-4.) To the extent Degenstein has identified Does as defendants in this case, the Court is unable to issue process to a Doe defendant. Degenstein's claims against these defendants should be dismissed without prejudice.

## 3. Renee Hall

Degenstein has named Renee Hall, Chief of Police of Dallas County, as a defendant. (ECF No. 9 at 2.) However, Degenstein has failed to allege any facts to support a claim against Chief Hall. And she may not rely upon Chief Hall's supervisory role over the Dallas Police Department as a basis for holding her liable because § 1983 does not impose vicarious liability on a police chief. *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988). Degenstein's claims against Chief Hall should therefore be dismissed with prejudice.

## 4. Erin Nealy Cox

Degenstein has named Erin Nealy Cox, the United States Attorney for the Northern District of Texas, as a defendant. (ECF No. 9 at 3.) There are no factual allegations in the second amended complaint against Cox. To the extent

12

Degenstein contends Cox, in her role as United States Attorney, violated her constitutional rights by failing to bring criminal charges against Smith, Cox is entitled to absolute prosecutorial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (§ 1983 case involving state prosecutors); *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987) (*Bivens* case involving federal prosecutors). Degenstein has not alleged any facts suggesting Cox acted beyond the scope of her prosecutorial role. Degenstein's claims against Cox should be dismissed with prejudice.

**5. Clay Jenkins**

Degenstein has named Clay Jenkins, the County Judge for the Dallas County Commissioners' Court, as a defendant. (ECF No. 9 at 2.) The Texas Constitution establishes the Commissioner's Court as the county's principal governing body. Tex. Const. art. V, § 18. "[The] primary function [of the Commissioner's Court] is the administration of county business." *Pugh v. Rockwall County, Texas*, 2000 WL 351389, at *5 (N.D. Tex. Mar. 10, 2000). The powers and duties of the Commissioner's Court include aspects of legislative, executive, administrative, and judicial functions. *Avery v. Midland Co.*, 390 U.S. 474, 482 (1968); *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997); *Ector County v. Stringer*, 843 S.W.2d 477, 478 (Tex. 1992). Degenstein has not alleged any facts to support a claim against Judge Jenkins. Therefore, Degenstein's claims against Jenkins should be dismissed without prejudice for failure to state a claim.

## 6. Remaining Individual Defendants

Degenstein also names several individuals as defendants, including: Smith; Smith's children, Scott Smith and Jason Smith; Smith's daughter-in-law, Ashley Smith; Sean McDonald, the lawyer who represented Smith from October 2019 through June 2020; and the Money Law Firm LLC, the law firm that employed McDonald while he represented Smith. She blames Smith, his family members, and his counsel for her arrest and for local officials' unwillingness to prosecute Smith.

To state a claim under Section 1983, a plaintiff must allege that a defendant acted "under color" of state law. 42 U.S.C. § 1983. Only "state actors" may be sued for federal civil rights violations. Private citizens, like these defendants, become "state actors" only when their conduct is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see also Filarsky v. Delia*, 566 U.S. 377, 383 (2012) ("Anyone whose conduct is 'fairly attributable to the State' can be sued as a state actor under § 1983.") (citing *Lugar*, 457 U.S. at 937). The phrase "fairly attributable to the State" means (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937. Degenstein does not allege that Smith, his family, or his attorney engaged in any conduct that could be fairly attributable to the state.

That a defendant may have provided information to the police does not make him a "state actor" for purposes of section 1983 liability. *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988) (private citizen who provides information to police is not a "state actor"); *Pleasant v. Carraway*, 25 F.3d 1044 (5th Cir. 1994) (per curiam) ("A private individual complainant in a criminal prosecution does not act under color of law," even if the police relied upon the individual's sworn complaint in arresting and charging the plaintiff.); *see also Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000) (citing cases holding that a private citizen is not liable under section 1983 for reporting crimes to the police or urging the government to prosecute for criminal offenses). And to the extent Degenstein attempts to assert claims against any defendant for interfering with her ability to pursue criminal charges, *see* ECF No. 9 at 13, "[t]here is no federal constitutional right to have someone investigated or prosecuted for alleged wrongdoing." *Rodgers v. Dallas Indep. Sch. Dist.*, 2007 WL 1686508, at *3 (N.D. Tex. June 1, 2007) (citing *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990)); *see Amir–Sharif v. District Attorney's Office*, 2007 WL 530231, at *2 (N.D. Tex. Feb. 21, 2007) (failure to investigate and prosecute jail guard for assault); *Althouse v. Hill*, 2002 WL 1750794, at *2 (N.D. Tex. Jul. 25, 2002) (state prosecutor allegedly refused to investigate inmate complaints); *see also Autrey v. Mississippi*, 66 F. App'x. 523, 523 (5th Cir. 2003) (per curiam) ("[The Plaintiff] had no constitutional right to have someone prosecuted for his mother's death."). Therefore, Degenstein's

federal claims against the remaining individual defendants should be dismissed with prejudice.

## 7. Supplemental Jurisdiction

Although the Court has supplemental jurisdiction over Degenstein's state law claims under 28 U.S.C. § 1367, the Court should decline to exercise supplemental jurisdiction here because the claims that permitted original jurisdiction have dropped out of the case. *See* 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction). The state law claims against Smith, Scott Smith, Jason Smith, Ashley Smith, Sean McDonald, and the Money Law Firm LLC should therefore be dismissed without prejudice to Degenstein raising them in state court.

## Conclusion

The Court should DISMISS with prejudice Degenstein's claims against the Dallas Police Department, Renee Hall, Erin Nealy Cox, and the federal claims against Donald Milton Smith, Scott Smith, Jason Smith, Ashley Smith, Sean McDonald, and the Money Law Firm LLC; DISMISS without prejudice the claims against the Unknown Police Officer Does 1-10 and Donald Milton Smith's daughter-in-law Doe 11, and Clay Jenkins; and decline to exercise supplemental jurisdiction over Degenstein's state law claims against Donald Milton Smith, Scott Smith, Jason Smith, Ashley Smith, Sean McDonald, and the Money Law Firm LLC and DISMISS those claims without prejudice.

**SO RECOMMENDED**.

November 6, 2020.

                                                REBECCA RUTHERFORD
                                                UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).